FILED

2016 Nov-17  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LAUREN BURRUSS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:15-cv-2367-CLS |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| PUBLIC HEALTH, *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on defendants' motion to dismiss plaintiff's amended complaint.[1]  Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

---

[1] Doc. no. 27.

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it

has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule
Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they
> are no more than conclusions, are not entitled to the assumption of truth.
> While *legal conclusions* can provide the framework of a complaint, they
> must be supported by factual allegations.  *When there are well-pleaded*
> *factual allegations*, *a court should assume their veracity and then*
> *determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in

original, other alterations supplied).

## I. PROCEDURAL HISTORY

Plaintiff filed this case on December 31, 2015, asserting claims for race

discrimination, hostile work environment, and retaliation pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").[2]  The

defendants to plaintiff's claims included:   her former employer, the Alabama

Department of Public Health ("the Department"); Sherry Ford, her former supervisor;

Lawrence Robey, M.D., the County Health Officer; Karen Butler, the Department's

Area Nursing Supervisor; and Meshonda Purdue, the Department's Clerical

Supervisor.[3]  Defendants jointly answered the complaint on January 25, 2016.[4]  This

---

[2] *See* doc. no. 1 (Complaint), at ¶¶ 57-83.

[3] *Id.* at ¶¶ 7-11.

[4] Doc. no. 10 (Answer).

court entered a Scheduling Order on June 24, 2016, stating that "[n]o causes of action, defenses, or parties may be added," and establishing deadlines of November 4, 2016, and December 5, 2016, for the completion of discovery and the filing of dispositive motions, respectively.[5]

Defendants filed a motion to dismiss or, in the alternative, motion for judgment on the pleadings on September 29, 2016, asserting that plaintiff's claims against the individual defendants were not cognizable under Title VII.[6]  Plaintiff requested permission to file an amended complaint in order to "clarify the claims against the four individual Defendants in their individual capacity."[7]  Plaintiff attached a copy of her proposed amended complaint to her motion for leave, but the text of the attachment was blurry.[8]  Accordingly, this court entered an order on October 4, 2016, granting plaintiff's motion for leave to amend, and ordering plaintiff to "file a clear copy of the amended complaint appended to her motion for leave" by October 7.[9]  The court also denied defendants' motion to dismiss or for judgment on the pleadings, but without prejudice to defendants' right to refile the motion or another appropriate pleading in

---

[5] Doc. no. 14 (Scheduling Order), at ¶¶ 1-3 (alteration supplied).

[6] Doc. no. 20.

[7] *See* doc. no. 22 (Motion for Leave to File Amended Complaint), at ¶ 3.

[8] *See* doc. no. 22-1 (Proposed Amended Complaint).

[9] Doc. no. 24 (October 4, 2016 Order), at 1.

-4-

response to the amended complaint.[10]  Plaintiff filed a clear copy of the amended

complaint on October 5, 2016.  The amended complaint named the same defendants

as the original complaint, but added a claim for "deprivation of rights" under 42

U.S.C. § 1983.[11]

## II. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, an African-American female, holds a Bachelor's Degree in Nursing

and is pursuing a Master's Degree in the same field.[12]  She began working for the

Madison County Health Department as a Staff Nurse in 1991.[13]  During the early part

of 2015, she worked in the Madison County Health Department's Women, Infant and

Children Program office.[14]

Plaintiff was away from work and out of town on February 27, 2015, when

someone at the Department's Central Office requested a patient chart that plaintiff had

been working upon.  Plaintiff had placed the chart in a locked cabinet, as opposed to

its usual location, because the office closed early due to inclement weather the day

before she left town.[15]  No one contacted plaintiff to ask her about the location of the

---

[10] *Id.*

[11] *See* doc. no. 25 (Amended Complaint).

[12] *Id.* at ¶¶ 15-16.

[13] *Id.* at ¶ 17.

[14] *Id.* at ¶ 21.

[15] *Id.* at ¶ 18.

chart, even though the Department had her cell phone number, and she had been contacted on her cell phone for work-related issues in the past.[16]  As other employees "searched for the chart, allegedly, they found paperwork in disarray in an old cubicle that [plaintiff] previously used," but no one gave plaintiff an opportunity to explain any of the paperwork that was found.[17]

As a result of the incident involving the patient file, plaintiff was reassigned to an "open area information booth for the Madison County Health Department where she would answer questions from the public and direct patients."[18]  Plaintiff believed that assignment was intended to "demean and embarrass" her because "she was a licensed RN delegated to menial duties."[19]  She "voiced her concerns" about the assignment to her supervisor, defendant Sherry Ford, who responded by reassigning plaintiff "to the environmental health department where [plaintiff] was designated as a file clerk and custodian, as her duties included filing records and cleaning offices."[20]

Ford and defendant Karen Butler asked plaintiff to prepare a statement regarding the circumstances that led to her reassignment on March 15, 2015.[21]  In that

---

[16] *Id.* at ¶ 19.

[17] Doc. no. 25 (Amended Complaint), at ¶ 20 (alteration supplied).

[18] *Id.* at ¶ 21.

[19] *Id.* at ¶ 22.

[20] *Id.* at ¶ 23 (alteration supplied).

[21] *Id.* at ¶ 24.

statement, plaintiff "addressed how the shortage of nurses at the Madison County Health Department lead [*sic*] to the loss of designated patient follow-up time which decreased the quality of care and attention to patients."[22]  She also "addressed her work load, and work history with the Madison County Health Department."[23] Thereafter, Butler initiated an investigation.  Butler revealed to plaintiff "that she had never come across a situation such as hers and was not sure how to investigate it."[24] Butler initially indicated that the investigation would be concluded by the end of that week, but the investigation period was extended because Ford was scheduled to be out of the office on Thursday and Friday of that week.[25]  Butler then turned the investigation over to defendant Lawrence Robey, who, "without independent investigation and with information from other nurses saying they had no experience investigating this type of case, . . . communicated to [plaintiff] that she would likely be terminated."[26]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on April 3, 2015, alleging discrimination on the

---

[22] *Id.* at ¶ 25.

[23] Doc. no. 25 (Amended Complaint), at ¶ 26.

[24] *Id.* at ¶ 27.

[25] *Id.*

[26] *Id.* at ¶ 28 (alteration supplied).

basis of race.[27]  After that, she "repeatedly asked her supervisors and others for a copy of her evaluations, as well as the human resources procedure manual used by the Madison County Health Department.  Eventually, she was given a copy of the employee handbook, but the entire section on disciplinary procedures had been removed."[28]

Ford and Robey met with plaintiff "in a dark environmental health employee office" at the end of the workday on April 9, 2015.[29]  They handed plaintiff a letter informing her that she was being placed on mandatory annual leave for a period of ten days pending an investigation into her workplace behavior.[30]  That initial mandatory leave period was extended by an additional ten days on April 22, 2015.  Plaintiff was informed of the extension of her mandatory leave both by letter, and by a telephone call from Ford and defendant Meshonda Purdue.[31]  Plaintiff now asserts that the decision to place her on mandatory annual leave was not in accordance with the Department's Human Resources Procedures Manual.[32]  Soon after the investigation

---

[27] *Id.* at ¶ 29.  *See also* doc. no. 1-1, at ECF 8-9 (April 3, 2015 EEOC Charge).

[28] Doc. no. 25 (Amended Complaint), at ¶ 30.

[29] *Id.* at ¶ 31.

[30] *Id.* at ¶¶ 31-32.  *See also* doc. no. 1-1, at ECF 10 (April 9, 2015 letter).

[31] Doc. no. 25 (Amended Complaint), at ¶¶ 33-34.  *See also* doc. no. 1-1, at ECF 11 (April 22, 2015 letter).

[32] Doc. no. 25 (Amended Complaint), at ¶ 47 (erroneously typed as 487).  *See also* doc. no. 1-1, at ECF 22-31 (Human Resources Procedure Manual).

began, Ford packed up plaintiff's personal belongings and informed off-site associates that plaintiff had retired, even though she knew that was not true.[33]

Plaintiff received a "Notice of Pre-termination Conference" from Robey on April 29, 2015.  Robey informed plaintiff that the termination of her employment had been recommended due to her violation of patient care protocols, and that a pre-termination conference would be held to give her the opportunity to tell her side of the story.[34]  The pre-termination conference was conducted on May 6, 2015, in Montgomery, Alabama.  Plaintiff and her attorney attended the conference, along with Harrison Wallace, the Pre-Termination Conference Chairman, and the Department's General Counsel.[35]

Plaintiff received a letter from Robey on May 8, 2015, informing her that her employment was being terminated, and that she would not be recommended for rehire with the Department.[36]  She filed a second EEOC charge on May 20, 2015, alleging both race discrimination and retaliation.[37]

Plaintiff applied for a position as a Rehabilitation Staff Nurse for the

---

[33] Doc. no. 25 (Amended Complaint), at ¶ 46.

[34] *Id.* at ¶ 35.  *See also* doc. no. 1-1, at ECF 12-15 (April 29, 2015 Notice of Pre-termination Conference).

[35] Doc. no. 25 (Amended Complaint), at ¶ 36.

[36] *Id.* at ¶ 37.  *See also* doc. no. 1-1, at ECF 16 (May 8, 2015 Notice of Termination).

[37] Doc. no. 25 (Amended Complaint), at ¶ 38.  *See also* doc. no. 1-1, at ECF 3-5 (May 20, 2015 EEOC Charge).

Department, but she received a notice on June 23, 2015, stating that she was not eligible for that position because she had been classified as not being recommended for re-employment after losing her former position.[38]

Plaintiff received a letter from the Alabama Board of Nursing on June 29, 2015, informing her that the Board had received a complaint against her nursing license.[39] Plaintiff's attorney submitted responses to that notice on September 15, 2015, and again on October 13, 2015.[40] Plaintiff learned on December 28, 2015 that the investigation was still ongoing and had been turned over to a Nursing Consultant for review.[41]

Plaintiff asserts that, while she still was employed by the Department, Ford "created a hostile work environment by communicating with her staff in a demeaning manner and by threatening staff, as well."[42] She also asserts that African-American employees were treated differently than Caucasian employees.[43] Specifically, "Caucasian staff had experienced errors and omissions concerning patient charts, but

---

[38] Doc. no. 25 (Amended Complaint), at ¶ 39. *See also* doc. no. 1-1, at ECF 17 (June 23, 2015 letter).

[39] Doc. no. 25 (Amended Complaint), at ¶ 40. *See also* doc. no. 1-1, at ECF 18 (June 29, 2015 letter).

[40] Doc. no. 25 (Amended Complaint), at ¶¶ 41-42. *See also* doc. no. 1-1, at ECF 19-21 (September 15, 2015 and October 13, 2015 letters).

[41] Doc. no. 25 (Amended Complaint), at ¶ 43.

[42] *Id.* at ¶ 45.

[43] *Id.* at ¶ 44.

their acts were not deemed to put patients at risk or in danger and were not placed on mandatory annual leave nor terminated."[44]   Additionally, "Caucasian staff with substance abuse problems repeatedly put patient[s] at risk and in danger, but were not faced with mandatory annual leave and/or termination."[45]   Finally, while the Department failed to post job openings for supervisory positions, plaintiff, who was the most senior RN in her office, was forced to train a Caucasian staff nurse who received positions as assistant supervisor and supervisor less than a year later.[46]

Plaintiff claims that she suffered:  "financial loss and mental anguish due to her lost wages and loss of health insurance while on Mandatory Annual Leave";[47] "financial loss because of [the Department's] failure to post supervisory job openings";[48] and "great mental and emotional anguish . . . ."[49] Her amended complaint asserts claims for race discrimination, hostile work environment, and retaliation pursuant to Title VII (Counts I-III), as well as "deprivation of rights" pursuant to 42 U.S.C. § 1983 (Count IV).

---

[44] *Id.* at ¶ 49.

[45] *Id.* at ¶ 50 (alteration supplied).  Plaintiff also more generally alleges that "other staff have engaged in conduct that put patients at risk and in danger, but they were not subject to mandatory annual leave and/or termination."  *Id.* at ¶ 51.

[46] Doc. no. 25 (Amended Complaint), at ¶ 52.

[47] *Id.* at ¶ 53.

[48] *Id.* at ¶ 54 (alteration supplied).

[49] *Id.* at ¶ 55 (ellipsis supplied).

# III. DISCUSSION

## A.    Title VII Claims Against Individual Defendants

Defendants move to dismiss all of plaintiff's Title VII claims against individual defendants Sherry Ford, Lawrence Robey, Karen Butler, and Meshonda Perdue because "Title VII relief may be imposed only against an employer."[50]  Plaintiff did not dispute that point in her response brief,[51] nor could she.  It is well established that "[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act."  *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (citing *Hinson v. Clinch County Bd. of Education*, 231 F.3d 821, 827 (11th Cir. 2000); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)) (alterations in *Dearth*, internal quotation marks omitted). Accordingly, all of plaintiff's Title VII claims against the individual defendants will be dismissed.

## B.    Claim Under 42 U.S.C. § 1983

As an initial matter, the court rejects defendants' argument that plaintiff's claim for "deprivation of rights" under 42 U.S.C. § 1983 should be dismissed as untimely. Even though the Scheduling Order deadline for adding parties and causes of action

---

[50] Doc. no. 27 (Motion to Dismiss Amended Complaint), at 3.

[51] Indeed, plaintiff explicitly acknowledged, albeit in a section heading, that the individual defendants "may not be held personally liable pursuant to Title VII for acts done while operating in their official capacities."  Doc. no. 29 (Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Amended Complaint), at 5 (boldface emphasis removed from original).

expired before plaintiff filed her amended complaint, the court granted plaintiff leave to amend her pleading and directed her to file an amended complaint.  Because the amended complaint was filed pursuant to a court order, it was not untimely.

Even so, the § 1983 claim cannot survive defendants' motion to dismiss because the amended complaint does not contain sufficient detail to determine the basis for the claim.  The Eleventh Circuit has clearly held that "an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim." *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) (citing *Allen v. Denver Public School Bd.*, 928 F.2d 978, 982 (10th Cir. 1991); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir. 1986)). Instead, "[t]o prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law."  *Arrington*, 139 F.3d at 872 (citing *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)) (alteration supplied).  Here, plaintiff alleges that defendants subjected her to "the deprivation of her rights secured by the Constitution,"[52] but, other than by referencing her Title VII claims, she does not state *which rights* have been violated. Plaintiff's vague reference to violated "rights" is not sufficiently detailed to satisfy the applicable pleading standards.  Accordingly, her § 1983 claim will be dismissed.

---

[52] Doc. no. 25 (Amended Complaint), at ¶ 84.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, it is ORDERED that defendants' motion to dismiss is GRANTED.  Plaintiff's claim pursuant to 42 U.S.C. § 1983 and her Title VII claims against the individual defendants are DISMISSED with prejudice.  As such, all claims against defendants Sherry Ford, Lawrence Robey, Karen Butler, and Meshonda Perdue are DISMISSED with prejudice.  The only claim that remains pending is plaintiff's Title VII claim against defendant State of Alabama Department of Public Health.

DONE this 17th day of November, 2016.

_____
United States District Judge

-14-